Chad C Shattuck, #9345
B. Ray Zoll, #3607
Tycksen & Shattuck, L.C.
12401 South 450 East, Suite E-1
Draper, Utah 84020
Telephone: (801) 748-4081
Fax: (801) 748-4087
Email: chad@tyshlaw.com
Email: rayzoll@hotmail.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STAN SHELLEY and ANDREA LEE SHELLEY, as individuals,<br><br>Plaintiffs,<br><br>v.<br><br>RANDY REDD, an individual, MARYLYNN N. REDD, an individual, DAKOTA REDD, an individual, KEVIN CLARK, an individual, LPL Financial, LLC, a California corporation, and Cazut Properties, LLC, an Arizona Limited Liability Company, Redd Works, LLC, and Arizona Limited Liability Company, Rojo 91, LLC, an Arizona Limited Liability Company, Peart 583, LLC, an Arizona Limited Liability Company,<br><br>Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING ARBITRATION AND MOTION TO DISMISS**<br><br>(ORAL ARGUMENT REQUESTED)<br><br>Case No. 2:24-cv-000095<br>Judge Howard C. Nielson Jr. |

**COME NOW,** Plaintiffs Stan Shelley and Andrea Shelley, by and through counsel Parties through undersigned counsel, hereby submits the following Opposition to Defendant's Motion to Stay Pending Arbitration and Motion to Dismiss.

## PRELIMINARY STATEMENT

Defendants' motion to stay pending arbitration and motion to dismiss (Dkt. No. 16, hereafter, "Defendants' Motion"), it is respectfully submitted, rests on inadmissible evidence and distorts (i) the facts of the case as alleged in the Complaint, (ii) the investment agreement between the parties, and (iii) the pleaded fraudulent representations made to induce the parties to invest and to enter into the applicable agreement. Building on the inadmissible evidence and distortions, Defendants then request this Court to (i) draw legal conclusions which contravene Plaintiffs' prima facie showing of jurisdiction and the relevant facts, and which are not warranted at the pleadings stage and (ii) ignore the well-established rules governing motions to dismiss, which require this Court to accept Plaintiff's allegations in the Amended Complaint as true and resolve all inferences in Plaintiffs' favor. Defendants evidently desire this Court to rely solely on the factual allegations and legal interpretations in Defendants' Memorandum of Law, and ignore the allegations in the Complaint and the admissible documentary evidence. These distortions do not suffice to deprive Plaintiffs of their ability to maintain this action.

Defendants have moved to stay all claims until arbitration is complete, or in the alternative, to dismiss all claims for lack of personal jurisdiction and failure to state a claim. All this without any evidence to support the request.

Defendants overlook the well-settled law in Utah that defendants can be held to account for their torts in a Utah court during the course of, or as a result of, their business dealings with the Plaintiffs. This case is classic 'bait and switch' where Plaintiffs were misled by Defendants into a real estate investment venture. Plaintiffs were solicited in Utah, Plaintiffs were harmed in Utah, and Defendants had every reason to know they were engaging in business transactions and tortious activities that both arose in Utah and would harm Utah residents.

2

Plaintiffs would not have invested and entered into this transaction but for Defendants' misrepresentations and reassurances that induced them to wire $1,507,500.00 to Defendants for a misrepresented land deal. Amongst other harms, these misrepresentations resulted in a substantial disparity between the transaction price Plaintiffs were encouraged to pay and the actual investment value of the Arizona property and the LLC holding company Defendants deceptively utilized to purchase the property at the time of closing.

The Defendants' Motion must be denied.

## RELEVANT FACTS

Plaintiffs incorporate by reference all of the facts as alleged in the Amended Complaint, and those set forth in the Declaration of Stan Shelly in Opposition to Defendants' Motion to Compel Arbitration and Alternative Motion to Dismiss for Lack of Jurisdiction, which is filed contemporaneously herewith.

## ARGUMENT

I. **Plaintiffs Are Not Bound To Arbitration By An Inadmissible, Unconscionable and Unenforceable Arbitration Provision**

    A. **Defendants' motion to stay must be denied because their arguments rest on inadmissible evidence regarding an agreement to arbitrate**

Defendants rest their motion to stay on the existence of a valid agreement to arbitrate introduced by way of Defendant declaration, yet have failed to introduce admissible evidence of any such agreement. Under Utah's Uniform Arbitration Act § 78B–11–108(1), the party seeking to compel arbitration has the initial burden of "showing an agreement to arbitrate." *Bad Ass Coffee Co. of Hawaii v. Naughty Donkey Enterprises, LLC*, 64 So.3d 659, 662 (Ala. Civ. App. 2010) (referencing Utah's code). Defendants have not met this burden.

First and foremost, Plaintiff Stanley Shelley was never and is not now subject to any provision of an arbitration clause found in the Cazut Properties, LLC operating agreement because Stan is not and has never been a member of Cazut Properties, LLC.  Hence, an arbitration provision applicable between members of an LLC is not applicable to Stan (i.e. there is no agreement between Stan and anyone involved in this case to arbitrate any dispute) where he is not one of the LLC's members. This fact is not in dispute because the plain terms of the alleged agreement submitted by the Defendants proves this point.

Similarly, turning to Andrea Lee Stanley, Defendants cannot meet their threshold burden to show that an agreement to arbitrate exists.

Under 28 U.S.C. § 1746, a valid declaration must be made "under penalty of perjury, and dated, in substantially the following form: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).'" Accordingly, an undated declaration is invalid. Kevin Clark's declaration in support of Defendants' Motion is undated. Consequently, Clark's declaration and the supporting exhibit with the alleged operating agreement and arbitration provision [*see* Dkt. 16-1, Decl. of Kevin Clark] is inadmissible and unable to be properly considered for a motion to dismiss and motion to stay. *See also*, *e.g., Elrod v. Walker*, No. 06-3115-SAC, 2011 WL 6372881, at *6 (D. Kan. Dec. 20, 2011), aff'd, 496 F. App'x 793 (10th Cir. 2012) (where party repeatedly refers to his "affidavit" as support for his motion for summary judgement, but court finds the affidavit neither admissible nor a proper declaration under penalty of perjury because it is undated and unnotarized.)

Clark's declaration was filed *in support* of Defendants' motion to compel arbitration, but must not be considered on the merits because it is inadmissible. The declaration's discussion of Cazut LLC and its Operating Agreement, including an alleged arbitration provision to be held

4

against Plaintiffs' legal interests in this matter, have no legal effect, and therefore no bearing on the motion now pending before the court.

Similarly, all three of the exhibits attached to Randy Dean Redd's declaration [*see* Dkt. 16-4, Decl. of Randy Dean Redd] are inadmissible because they are not accompanied by a legitimate affidavit or declaration confirming the validity and "truth and correctness" of the exhibits – his phone records, email exchanges, or text messages. *See Mallard v. Howard*, No. 22-4053-EFM, 2024 WL 726983, at *5 (D. Kan. Feb. 22, 2024); *Taylor v. Principi*, 2004 U.S. Dist. LEXIS 2159, at *9, 2004 WL 303208 (D. Kan. Feb. 4, 2004) ("Documents filed are inadmissible when they are not accompanied by affidavits attesting to the validity of the documents. When such documents are offered without proper authentication, the Court should not consider them in its ruling."); *Denmon v. Runyon*, 1993 U.S. Dist. LEXIS 15425, at *9, 1993 WL 441970 (D. Kan. Oct. 25, 1993) ("A writing is not authenticated simply by attaching it to an affidavit…").

As a threshold matter, Plaintiff's own failure to support its motion with admissible documentary evidence in support of a motion to stay pending arbitration by its failure to properly introduce an arbitration agreement into the record provides no justifiable grounds to stay the proceedings. Thus, where there is no record of an agreement requiring arbitration for the Court's review and consideration, Defendants' motion to stay must be denied.

> **B.     Where the Court finds that there is no enforceable arbitration agreement (or no agreement to assess at all), it may not compel the parties to arbitrate**

Utah law is clear that where there are grounds for the revocation of a fraudulently induced contract, an arbitration provision in that fraudulently induced contract is not enforceable. "An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable ***except upon a ground that exists at law or in equity*** for the revocation of a contract." Utah Code Ann. § 78B-11-

5

107 (West); *see also,* 9 U.S.C. § 2 ["A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, ***save upon such grounds as exist at law or in equity for the revocation of any contract***.]"

"Utah law prescribes that the arbitration agreement is severable from the contract as a whole and the court need only determine whether the arbitration provision is enforceable… If the court finds that there is no enforceable agreement, it <u>may not</u> order the parties to arbitrate." *Roberts v. Cent. Refrigerated Serv.*, 27 F. Supp. 3d 1256, 1259 (D. Utah 2014); cf. *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–72 (2010) (under federal arbitration law an arbitration provision is severable from the remainder of the contract and any challenge to the contract as a whole is to be left for the arbitrator). While a party's challenge to another provision of the agreement (here the Cazut Properties LLC Operating Agreement), or to the contract as a whole does not necessarily prevent a court from enforcing a specific provision to arbitrate within the contract, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010), citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).

Like other contracts, arbitration provisions may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Where there is a challenge to the arbitration provision itself, the federal court must consider the challenge before ordering compliance with the underlying agreement containing the provision under 9 U.S.C. § 4. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006), citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

6

Here, Plaintiffs have alleged and requested that the court find that Cazut LLC is "a null and void and fictitious company in regard to this lawsuit and is otherwise deemed null and void regarding its operating agreement **and all of its provisions** as against the Shelleys." Amended Complaint ¶112. It goes on to allege that "**any provisions regarding** venue and **arbitration for disputes between the parties is not applicable and void AB INITIO as a matter of law** due to the fraud in the inducement and misrepresentations…coupled with non-compliance of its own provisions." *Id.* The Plaintiffs have specifically pled that the arbitration provision in the operating agreement is not applicable as a result of fraud in the inducement. *Id*. This carve-out falls squarely within the Supreme Court's finding that arbitration provisions are severable and may only be enforced when specifically challenged <u>if not</u> induced by fraud, duress, or unconscionability.

II.     **Plaintiffs Have Made A Prima Facie Showing Of Jurisdiction**

"In determining questions of jurisdiction, a trial court may, in its discretion, hold an evidentiary hearing, or base its decision on documentary evidence alone (pleadings, affidavits, and/or discovery)." *Kamdar & Co. v. Laray Co.*, 815 P.2d 245, 247 (Utah Ct. App. 1991). "[I]f the matter is to be determined on the documentary evidence alone, the plaintiff must simply make a prima facie showing of personal jurisdiction." *Id*. at 248. "The plaintiff's factual allegations are accepted as true <u>unless specifically controverted</u> by the defendant's affidavits or by depositions, but **any disputes in the documentary evidence are resolved in the plaintiff's favor.**" *Anderson v. American Society of Plastic & Reconstructive Surgeons*, 807 P.2d 825, 827 (Utah 1990).

A.      **Specific Jurisdiction**

While there are two categories of personal jurisdiction—general and specific—only the latter is relevant here, as both parties agree that Defendants are not subject to general personal jurisdiction in Utah. Specific personal jurisdiction "gives a court power over a defendant only with

7

respect to claims arising out of the particular activities of the defendant in the forum state." *Arguello v. Industrial Woodworking Mach. Co.,* 838 P.2d 1120, 1122 (Utah 1992). Consequently, personal jurisdiction is proper if "(1) the Utah long-arm statute extends to defendant's acts or contacts, (2) plaintiff's claim arises out of those acts or contacts, and (3) the exercise of jurisdiction satisfies the defendant's right to due process under the United States Constitution." *Fenn*, 2006 UT 8, ¶ 8, 137 P.3d 706.

Pursuant to Utah's long-arm statute, a person is subject to Utah's jurisdiction if the person performs one of several enumerated acts. See Utah Code Ann. §78B-3-205. The relevant provision of the long-arm statute provides for personal jurisdiction over nonresidents as follows:

> [A]ny person ..., whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to:
> (1) the transaction of any business within this state, and
> (3) the causing of any injury within this state whether tortious or by breach of warranty;

*Id*. "The words 'transaction of business within this state' mean activities of a nonresident person, his agents, or representatives <u>in this state</u> which affect persons or businesses <u>within the state</u>." § 78B–3–202(2). Plaintiffs assert that Defendants have transacted business within the state by soliciting an investment from Plaintiffs in Utah and thereby caused tortious injury within the state. Plaintiffs have specifically pled that the negotiations for the property investment took place in Utah[1], was funded via a wire from Utah[2], and was intended to benefit the Plaintiffs in Utah. All relevant transactions took place in Utah, and all proceeds of the Plaintiffs' investment were to be returned to Utah residents in Utah.

---

[1] Amended Complaint ¶14.
[2] Amended Complaint ¶31.

Pursuant to Utah Code §78B–3–201, the long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." *Id.* § 78B–3–201(3). Given the long-arm statute's breadth, "we often assume the application of the statute—and go straight to the due process issue." *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 19, 201 P.3d 944 (citation and internal quotation marks omitted); *see also Arguello*, 838 P.2d at 1122 ("We assume that ... subparagraph (1) ... of the long-arm statute will be satisfied if Utah's exercise of specific personal jurisdiction over [the defendant] satisfies due process.").

Utah's long-arm statute requires only a good-faith allegation of injury in order to vest the court with power to proceed to trial. *Mountain States Sports, Inc. v. Sharman*, 1972, 353 F.Supp. 613. Here, Plaintiffs have plainly made that allegation.

One Utah court has held that a single phone call to the state of Utah which created an oral contract was sufficient to satisfy the nexus requirement. *Nova Mud Corp. v. Fletcher*, 1986, 648 F.Supp. 1123. More recently, courts have recognized that the circumstance of presence in Utah by way of correspondence and telephone calls, without more, is not necessarily sufficient to establish jurisdiction. However, in this case, there is more. Under the totality of facts which bear upon Defendants' transaction of business within the state, under the broad interpretation of the Utah statute the nexus requirement is met and the Plaintiffs have carried the small burden at this stage of the proceeding of showing that the claims here do arise out of the Defendants' transaction of business in Utah with citizens of Utah. *See, e.g.*, *STV Int'l Mktg. v. Cannondale Corp.*, 750 F. Supp. 1070, 1077 (D. Utah 1990).

In the Amended Complaint, Plaintiffs have described the negotiations that took place in Utah. Plaintiffs have described funding their investment from Utah. Plaintiffs have described being

9

harmed and defrauded in Utah. Inasmuch as some of said facts as pertaining to jurisdiction are at issue, Plaintiffs also submit the Declaration of Stan Shelly filed herewith.

While it is true that financial injury alone (without any other actions like solicitation in the forum state) cannot establish specific personal jurisdiction over a nonresident defendant because such a rule would lead to the unacceptable proposition that jurisdiction could be established anywhere a plaintiff might relocate, a suggestion that financial injuries cannot provide the basis for jurisdiction at all is an oversimplification. *Pohl, Inc. of America v. Webelhuth*, 2008, 201 P.3d 944, rehearing denied. That's because the cases relied on by the court of appeals in concluding that economic injuries provide an insufficient basis for jurisdiction are cases in which the only injuries suffered in the state were the economic consequences of torts **directed elsewhere**. *Id*. Such is not the case here. The economic consequences of the Defendants' torts were directed at Utah by intentionally soliciting an investment from Utahns. Defendants needed funding from Utah residents. They took money from Utah residents. They harmed the financial condition of Utah residents. This was not an arms-length transaction. The Defendants were well aware that their fraud and misrepresentations would directly cause harm in Utah to two Utah residents. Indeed, the harm could not have been inflicted elsewhere, and was not inflicted anywhere else. The plain language of the long-arm statute does not exclude financial injuries caused by tortious actions, and any such limitation must come from the Due Process Clause. *Id*.

    B.    **Federal Question Jurisdiction**

In an attempt to disprove a federal question over Plaintiffs' federal securities claims (the first and second causes of action), Plaintiff erroneously suggests that "the first step in analyzing whether viable a federal securities claim has been alleged is to determine whether Plaintiffs' interest in Cazut is a "security." This may be true if both Plaintiffs actually held an interest in Cazut

– but they didn't. By Defendants' own submission, Stan Shelley is <u>not</u> a member or manager of Cazut Properties, LLC. See Dkt 16-1 at pp. 27-20 [Cazut membership agreement showing Andrea Lee Shelley as a member and no membership record for Stanley Shelley.] Accordingly, the *Howey* test (*SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946)) and *Schaden* test (as to Stan's allegedly "passive investment" *as a member of an LLC* is misplaced, and does not serve to undermine Stan Shelley's federal claims against the Defendants.

Defendants tether their entire argument to the premise that both Andrea and Stan Shelley had a membership interest in Cazut. To the contrary. Not only did he have no membership interest, but Stan had no "control rights" in Cazut and was "dependent upon the managerial skills of others" when investing his money for the purchase of the subject property. *See* Defendants' Motion at p. 18, citing *Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir. 1982). Indeed, Stan gave up control when he invested with Cazut– maintaining *no* "degree of control" with his investment, contrary to the implication of an LLC member's "reasonable expectation of significant investor control" as explained in Defendants' Motion at p. 18. Contrary to Defendants' assertions, it is clear from Stan's allegations that he had no intention to, nor "ability to maintain some degree of control" over the LLC. *Id*.

Again, Defendants simply misunderstand. Stan did not have "substantial rights in the management and operation of Cazut" as alleged in Defendants' Motion at. P. 18. How could he? He was not even a member of Cazut and held no interest at all. Thus, he had no part of the "supermajority membership interest described in Defendants' Motion, thus no control over the entity's ability to acquire, convey, sell, transfer, or dispose of real property. Further, in direct contrast to the assertion by Defendants, Stan (as a non-member of Cazut) had no right to obtain information, approve the sale, exchange or dispose of assets, vote on matters, inspect or copy

Cazut's books or call a special meeting. See allegations in Defendants' Motion at p. 19. Again, Stan was not and is not a member of Cazut.

The fact that Stan was "able to call a meeting" to discuss his investment[3] does not give him any membership right. In addition, and that Stan was given "tasks" to complete by those he trusted with his large investment[4] does not denote an active investment. Rather, it suggests that Stan had to clean up and perform substantial follow-up after he and his wife were defrauded by the Defendants' intentional misrepresentations used to induce the investment in the first place. Those were the actions of someone desperately attempting to recoup and investment that had gone bad due to the misrepresentations of another. Additionally, Stan had no right to access information because he wasn't subject to the Operating Agreement. Stan had no "substantial contractual power" to control Cazut because he didn't have a membership interest.

Notwithstanding the membership issues, Stan has adequately pled a federal securities fraud claim. Stan has claimed, with specificity, facts sufficient to raise a strong inference of scienter. For example, Plaintiffs have claimed when, where and how the fraud took place, including what constituted the misconduct. These allegations are uncontroverted by any admissible declaration, and to the extent there is a dispute as to the facts alleged, the court must give deference to the Plaintiffs' allegations for the purposes of this motion. Plaintiff has made a prima facie case, and it remains uncontroverted.

### C. Diversity Jurisdiction

To establish diversity, Plaintiff must demonstrate that there is complete diversity between the citizenship of Plaintiffs and the citizenship of the Defendant. *Woods v. Ross Dress for Less, Inc.*, 833 Fed. Appx. 754, 756 (10th Cir. 2021). "[T]he statutory formulation 'between ... citizens

---

[3] Amended Complaint at ¶37.
[4] Amended Complaint at ¶¶39-40.

of different States' ... require[s] complete diversity between all plaintiffs and all defendants." There is no dispute that there is complete diversity between Plaintiffs (both Utah residents) and the defendants in the first, second, third, fourth, fifth, sixth and seventh causes of action (all Arizona residents). *See* Defendants' Motion at pp. 2 and 9 and the Declaration of Stan Shelley, filed contemporaneously herewith. Each defendant in those first seven causes of action was sued individually and thus, as to those causes of action, there is undisputed diversity.

### D.     Ancillary Jurisdiction Over State Law Claims

Supplemental jurisdiction, often referred to as pendant or ancillary jurisdiction, is the authority of federal courts to hear claims that wouldn't normally fall under the court's jurisdiction, but are closely related to claims that do fall within the court's jurisdiction. The rule is codified at 28 U.S.C. § 1367. Plaintiff's state law claims rest on the allegations that do fall within this court's jurisdiction, and are thus closely related sufficient to justify ancillary jurisdiction.

### CONCLUSION

For the foregoing reasons, Plaintiffs pray this Court deny Defendants' motion to stay the proceedings and the Defendants' motion to dismiss. In the alternative, Plaintiffs respectfully seek jurisdictional discovery and leave to amend thereafter.

### HEARING REQUEST

Should the court not summarily deny the Defendants' motion, Plaintiffs hereby request a hearing for oral argument on it.

DATED 26th day of November, 2024.

TYCKSEN & SHATTUCK, L.C.

*/s/ Chad C Shattuck*
Chad C Shattuck
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2024, I caused a true and correct copy of the foregoing document to be served via CM/ECF on the following:

Robert Jeremy Adamson
(jadamson@kba.com)

Keith Hendricks
(Khendricks@law-msh.com)

*/s/Stephanie Brown*
Stephanie Brown
Paralegal